BELLANCA AIRCRAFT CORPORATION, a corporation of the State of Delaware,

Defendant Below, Appellant,

*vs.*

LEON M. PISCULLI,

Complainant Below, Appellee.

*Supreme Court, On Appeal, July 7, 1931.*

Pennewill, C. J., Rice, Harrington, Richards and Rodney, JJ., sitting.

*Robert H. Richards* and *Aaron Finger,* of the firm of Richards, Layton and Finger, for appellant.

*James R. Morford,* of the firm of Marvel, Morford, Ward and Logan, and *William T. Lynam, Jr.,* for the appellee.

430

432

PENNEWILL, C. J., delivering the opinion of the court:

The first question to be considered is whether the $3,000 tendered by the vendee to the vendor under the conditional sale agreement was sufficient to discharge the $1,900 due and unpaid on the purchase price of the plane with interest, and also the expenses of retaking, keeping and storage of the plane, as well as any repairs the vendee was bound to make.

The Chancellor found as a fact that Sabelli made tender of a sum sufficient to cover the balance due on the pur-

chase price with interest and charges for repairs (total of $2,620.97) and an additional sum of $379.00 to cover the expenses of retaking, keeping and storage and said:

"Under the evidence I am forced to conclude that this latter sum was amply sufficient to more than cover all reasonable charges for retaking, keeping and storage."

In explanation of his findings the Chancellor stated:

"The Bellanca Company's claim of $3,054.60 was for balance of purchase price ($1,900.00), interest thereon, repairs, expenses of retaking, keeping and storage. At the time of the tender the $1,900.00 item together with interest had to be paid under the New York statute before the plane could be redeemed. Assuming, but not deciding, that repair bills had also to be paid, then according to the Bellanca Company's own statement, such charges together with the $1,900.00 and interest due totalled $2,620.97. The only other cash obligations which the New York statute exacts as a condition precedent for redemption is the payment of a sum sufficient to re-imburse the retaker for the 'expense of retaking, keeping and storage.' The charge for retaking certainly could have been little, if anything, because the plane was in the Bellanca Company's possession already, having been turned over to it for repairs. The items of 'keeping and storage' could not have been large, because if the charge for keeping and storage is to be confined to the period intervening between the retaking and the redemption as I think it must, such period was for only ten days. The plane as I recall was kept and stored at the hangar of Delaware Flying Service, Inc., adjoining the Bellanca plant. No extraordinary expense therefore could have been incurred by reason of the location of the storage place.

"In view of the foregoing we have then this situation—Sabelli made tender of a sum sufficient to cover the balance due on the purchase price with interest and charges for repairs (total of $2,620.97) and an additional $379.03 to cover the expenses of retaking, keeping and storage. Under the evidence I am forced to conclude that this latter sum was amply sufficient to more than cover all reasonable charges for retaking, keeping and storage."

The Chancellor having found as a fact that the tender made by Sabelli to the Bellanca Company was sufficient to cover the balance due on the purchase price of the plane with interest, charges for repairs, and expenses of retaking, keeping and storage, and there being, in the opinion

of this court, evidence that warranted such finding, we will accept the conclusion of the Chancellor as a final determination of that question of fact.

We are not unmindful of the testimony of Bellanca that he refused to accept the tender because it was not sufficient; neither are we unmindful of the further fact that Bellanca refused to tell Sabelli when requested, what sum would be sufficient, and referred him to the company's attorney for further information, which was not given.

It is true that the New York statute provides that upon written demand by the buyer the seller shall furnish to the buyer a written statement of the sum due under the contract and the expense of retaking, keeping and storage. But the provision is immaterial, and the demand unnecessary if there is a tender made, and it is sufficient to cover all that is due under the contract.

We come now to the second point in the defendant's case—the one that is particularly stressed in the argument—and upon which reliance seems to be strongly placed, viz., the failure of Sabelli to make an endurance flight.

As already stated, the endurance flight which Sabelli agreed to make and which was one of the requirements covered by the conditional sales contract was not made. Therefore, no reward was received in connection therewith. Consequently, no money was obtained for an endurance flight a percentage of which could be paid to the defendant company.

But was Sabelli in default under the conditional sale agreement and not entitled to the possession of the plane because of his failure to compete for an endurance record for sustained flight?

Sabelli says the endurance flight was not made for the reason that at no time was the plane in a condition to compete in such a flight. The Chancellor found as a fact that "the plane was incapable of making an endurance flight" saying "there can be no doubt upon the point."

We think it is clear from the evidence that the Chancellor was warranted in his conclusion.

It clearly appears from the record that between May and September, 1928, constant tests and adjustments were being made by the defendant to put the plane in condition for a trans-ocean flight and that it was in no better condition after September. Bellanca testified as follows:

"There wasn't any endurance flight made, but we thought the plane was in condition to make a flight, but after making some consumption tests, the second motor burned out," and in reply to a question then asked by the complainant's solicitor "And you found out from those consumption tests that the ship was not in condition to make an endurance flight?" the witness said: "We found it out then, but before that we thought it was."

If an endurance flight was to be made it was incumbent on the defendant to furnish Sabelli with a plane capable of making the flight. This was an attempt at a long distance flight which failed because of a serious defect in the motor, and to remedy the defect and make the flight possible, three different motors were installed by the defendant, none of which was sufficient. There can be no doubt that it was impossible for Sabelli to make the contemplated flight at any time and that such impossibility was not caused by his failure to make repairs or by any default on his part, but solely on account of defendant's inability or failure to furnish a plane that was capable of making an endurance flight.

And so we say, the finding of the Chancellor, that at no time between the delivery of the plane on May 22, 1928, and the retaking of it by the defendant, under the conditional sale contract, on January 9, 1929, was the plane capable of making an endurance flight, is fully supported by the evidence.

But the defendant says the defect in the plane that made it incapable of making an endurance flight was in the

motor and under the contract it was expressly relieved of any obligation respecting the motor, its sole obligation being to furnish the Pratt-Whitney Hornet Motor that was specified.

The original motor proved insufficient and another one was installed by the defendant, and subsequently while some tests were being made after a flight from New York to New Castle, the second motor was likewise found to be unsuitable, and a third motor was substituted by the defendant. Manifestly, there was no thought that Sabelli was bound to repair any of the motors that proved unsatisfactory. We are unable to see how Sabelli's obligation to repair any injuries to the plane could embrace the installation of a new motor in the place of one the defendant had installed.

But defendant's contention raises the question whether the incapacity of the machine to make an endurance flight resulted from Sabelli's failure to keep it in repair. He did not construct the plane and certainly any structural defect therein was not something he was bound to repair. As we have said, at no time was the plane in condition to make the flight to Italy, not even when it was first delivered to Sabelli. The record clearly shows that its failure to remain in the air was attributable to some defect in the plane and not to a neglect or failure to repair the same. The defendant company, after unsuccessful efforts at flight had been made, attempted to remedy the defects in the plane but never put it in condition to make the long distance flight it was intended to make. It cannot be denied that the plane was incapable of making such a flight and if its incapacity was caused by some defect that Sabelli was not responsible for under his contract, certainly his failure to make the flight could not be attributed to his default.

It is true that no time was fixed for the flight, but it is equally true that at no time between the delivery of the plane to Sabelli, and its retaking by the Bellanca Company, which retaking made performance of the condition on Sa-

belli's part impossible, was the plane capable of making the endurance flight which all parties hoped might be made.

The other specifications of default on Sabelli's part, heretofore mentioned, and numbered four, five, six, seven and eight, were apparently not relied on by the defendant in the argument. They were incidental to the contract; they were very meagerly discussed, and no doubt for the reason that these requirements, in respect to which Sabelli is charged with being in default, were made a part of the contract to preserve the defendant's right to the plane, and make more certain that it would at all times be available for the payment of the balance of the purchase price. To show that these alleged defaults were regarded as unimportant respecting Sabelli's right to the possession of the plane, we quote from defendant's brief the following:

"The conditional sales contract was given to secure these two unfulfilled obligations, to wit:

"1. Payment of $1,900 within sixty days;

"2. Making an attempt at an endurance record for sustained flight with the plane, and

"3. Payment of eighteen per cent. of gross receipts therefrom.

"All other covenants of Sabelli under the contract were incidental to and to enable performance of the two principal obligations."

For the reasons above given, the decree of the Chancellor will be affirmed.